## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

LEWIS M. MOTON, JR.,

      Plaintiff,

v.                                  Case No. 8:06-CV-2163-T-30EAJ

CAPTAIN B.E. COWART, et. al.,

      Defendants.

_____/

# ORDER

Plaintiff, an inmate of the Florida penal system proceeding *pro se*, initiated this action by filing a civil rights complaint (Dkt. 1) on November 1, 2006. Currently before the Court is Defendants' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b) (Dkt. 44), and Plaintiff's response to the motion to dismiss (Dkt. 47). Plaintiff is currently incarcerated at Charlotte Correctional Institution. The events about which he complains occurred in 2004, while Plaintiff was housed at Hardee Correctional Institution. Plaintiff names as defendants Florida Department of Corrections (hereinafter "DOC") employees Captain B.E. Cowart, Classification Officer W.O. Sheetz, and Lieutenant Prieto.

## Background

Plaintiff alleges that his "First Amendment right . . . was violated when [he] was arbitrarily confined and punished for the submission of an informal grievance" in September 2004 (Dkt. 1 at 8). According to Plaintiff:

> B.E. Cowart, Correctional Officer Captain on 11-1-04, at Hardee C.I., out of reprisal wrote Plaintiff a Disciplinary Report (1-4, Disrespect to Officials) for his submission of an informal grievance and confined Plaintiff, violating his First Amendment right with deliberate indifference while acting under color of state law. . . . W.O. Sheetz, Classification Officer on 11-9-04 at Hardee C.I. found Plaintiff guilty of the false Disciplinary Report written by Captain Cowart. . . . Lt. Prieto, Correctional Officer Lieutenant on 11-9-04, at Hardee C.I. found Plaintiff guilty of the false Disciplinary Report written by Captain Cowart. This wrong was not stopped and fixed until 12-9-04 at a "rehearing" where Petitioner was found not guilty after having spent approximately 30 days in Disciplinary Confinement.

*Id*. at 8-9. Plaintiff seeks "$5,000 in damages as a result of the injury sustained by the violation of his First Amendment Right . . . per each Defendant" *Id*. at 10.

### Standard of Review

When considering a Rule 12(b)(6) motion to dismiss, a court must accept the allegations in the complaint as true and construe them in a light most favorable to the plaintiff. *Kirby v. Siegelman*, 195 F.3d 1285, 1289 (11th Cir. 1999) (citations omitted). To satisfy the pleading requirements of Fed. R. Civ. P. 8, a complaint must simply give the defendant fair notice of what the plaintiff's claims are and the grounds upon which they rest. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (citation omitted). The issue is not whether the plaintiff will ultimately prevail on his claim, but rather whether the plaintiff may be entitled to offer some evidence to support the claim. *Little v. North Miami*, 805 F.2d 962 (11th Cir. 1986).

Until the recent Supreme Court decision in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007), courts routinely followed the rule that "a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of

facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  However, pursuant to *Twombly*, which abrogated *Conley*, to survive a motion to dismiss, a plaintiff's complaint must include "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127 S. Ct. at 1974.  Thus, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 1964-65. Dismissal of a complaint is warranted if, assuming the truth of the factual allegations of the plaintiff's complaint, there is a dispositive legal issue which precludes relief. *Neitzke v. Williams*, 490 U.S. 319, 326 (1989) (citations omitted).

## Discussion

In their motion to dismiss, Defendants argue that this action should be dismissed because: 1) Plaintiff fails to establish he properly exhausted administrative remedies; 2) Plaintiff fails to state a cause of action upon which relief could be granted; and 3) Defendants are entitled to both Eleventh Amendment immunity and qualified immunity (Dkt. 44).

## 1. Failure to exhaust administrative remedies

Ordinarily, plaintiffs pursuing civil rights claims under § 1983 need not exhaust administrative remedies before filing suit in court. 42 U.S.C.A. § 1983.  On April 26, 1996, however, the President signed into law the Prison Litigation Reform Act which amended The Civil Rights of Institutionalized Persons Act, 42 U.S.C. §1997e, to read as follows:

> (a) APPLICABILITY OF ADMINISTRATIVE REMEDIES. -
> No action shall be brought with respect to prison conditions
> under section 1997 of the Revised Statutes of the United States

> (42 U.S.C. 1983), or any other Federal law, by a prisoner
> confined in any jail, prison, or other correctional facility until
> such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).  Section 1997e(a) does not say that exhaustion of administrative

remedies is required before a case may be decided. It says that "[n]o action shall be brought

with respect to prison conditions . . . until such administrative remedies as are available are

exhausted." 42 U.S.C. 1997e(a).  "Congress could have written a statute making exhaustion

a precondition to judgment, but it did not. The actual statute makes exhaustion a precondition

to suit." *Perez v. Wisconsin Dep't of Corrs.*, 182 F.3d 532, 534-35 (7th Cir. 1999).

Florida has established a channel for the administrative settlement of a grievance for

prisoners who seek to challenge the conditions of their confinement. *See* Fla. Admin. Code

33.103.001(1).  In *Chandler v. Crosby*, the Eleventh Circuit reviewed the process by which

an inmate in the Florida penal system exhausts a complaint, stating as follows:

> The Florida legislature has delegated to the Department of Corrections (the
> "DOC") the duty to establish inmate grievance procedures. *See* Fla. Stat. Ann.
> § 944.09(1)(d) ("The department has authority to adopt rules. . . to implement
> its statutory authority. The rules must include rules relating to. . . [g]rievance
> procedures which shall conform to 42 U.S.C. § 1997e."); *id.* § 944.331 ("The
> department shall establish by rule an inmate grievance procedure that must
> conform to the Minimum Standards for Inmate Grievance Procedures as
> promulgated by the United States Department of Justice pursuant to 42 U.S.C.
> § 1997e. The department's office of general counsel shall oversee the
> grievance procedures established by the department."). The DOC has
> established such grievance procedures. *See* Fla. Admin. Code Ann. §§
> 33-103.001 to -103.019. Subject to certain exceptions not applicable in this
> case, an inmate who wishes to complain about a condition of confinement
> must first file an "informal grievance. . .  to the staff member who is
> responsible in the particular area of the problem." *Id.* § 33-103.005(1). If the
> inmate is unsatisfied with the response he receives, he may file a formal
> grievance with the warden's office. *Id.* § 33-103.006(1)(a). If the inmate wants

4

to pursue his complaint further, he may submit an appeal to the Secretary of the DOC. Id. § 33-103.007. The regulations state,

> The Office of the Secretary has designated the Bureau of Inmate Grievance Appeals to receive, review, investigate, evaluate and respond to appeals filed with the Office of the Secretary. Appeals to the Office of the Secretary shall be turned over that same date to the Bureau of Inmate Grievance Appeals. . . . *Id*. § 33-103.007(4).

*Chandler v. Crosby*, 379 F3d 1278, 1287-88 (11th Cir. 2004).

Pursuant to Fla. Admin. Code § 33-103.006(3), "[t]he following types of grievances may be filed directly with the reviewing authority as defined in paragraph 33-103.002(15)(b), F.A.C., by-passing the informal grievance step, and may be sent in a sealed envelope through routine institutional mail channels:...(c) Grievance of Reprisal."  A "Grievance of Reprisal: [r]efers to a grievance submitted by an inmate alleging that staff have or are threatening to take retaliatory action against the inmate for good faith participation in the inmate grievance procedure."  Fla. Admin. Code § 33-103.002(10).

On November 4, 2004, Plaintiff submitted a formal grievance in which he wrote:

> GRIEVANCE OF REPRISAL: In accordance with Ch. 33-103.006(3)(c), 33-103.006(4) I state my reason for by-passing the informal grievance step is due to action being taken against me as the result of me submitting a grievance, in violation of Ch. 33-103.017(1).  SUBJECT: Captain Cowart writing me a DR for my use of capitalization in a grievance, which she called disrespectful. Prior to receiving 2 retaliatory DR's and being confined by Captain Cowart I was unduly harassed by Captain Cowart and Sgt. Gardner, who both woke me up during early morning hours, depriving me of sleep, in order to intimidate me concerning requests I wrote.  Then, when I write a grievance for Capt. Cowart's failure to respond to my requests within ten (10) days, she writes me a DR for disrespect and threats.  REMEDY: Release me and remove DR's from my record.

5

(Dkt. 1 at 14).

On November 24, 2004, the Warden's office responded to the grievance and stated "You appear to be grieving an issue that cannot be addressed since the disciplinary report has been ordered to be reheard at this time.  Since no disciplinary action has been taken, this writer is neither approving nor denying this grievance.  Your grievance is being returned with this information, as there is no grievable issue at this time."  (Dkt. 1 at 16).

Plaintiff appealed the Warden's response to his formal grievance by filing a grievance with the Secretary for the Florida Department of Corrections on November 27, 2004 ("appeal grievance") (Dkt. 1 at 11-12).  In Plaintiff's appeal grievance, he stated, in pertinent part:

> APPEAL OF OFFICIAL BRAZIL'S DECISION ON GRIEVANCE OF REPRISAL: Official Brazil's decision is erroneous as my "grievance of reprisal" should have been responded to on its merits despite the DR(1-4) being ordered reheard.  Furthermore,...my grievance of reprisal is clearly and plainly describing a prosecutable violation of federal criminal civil rights statues [sic].  My First and Fourteenth Amendment rights, along with my Eighth Amendment right, as well as my right to Due Process, have all been violated as a result of me being confined for filing a grievance, and punished for filing a grievance...The retaliation is due to having filed several requests/grievances which caused Captain Cowart to attempt to intimidate me by threatening me with a DR for filing the request...then Captain Cowart locked me up for filing a grievance she called "disrespectful" due to the grievance being wrote in capital/large letters...there is no violation of D.O.C. rules for writing a grievance in capital/large letters...

(Dkt. 1 at 11-12).

On December 3, 2004, the Secretary's office responded to Plaintiff's appeal grievance and stated "Your administrative appeal to this office is in non-compliance with Chapter 33-

6

103, Inmate Grievance Procedure, because your grievance at the institutional level was determined to be in non-compliance with the requirements of the rule resulting in your appeal to this office being in non-compliance.  Complaints against staff of this nature should start at the institutional informal level.  Your request for administrative appeal is being returned without action."  (Dkt. 1 at 13).

Initially, it appears that Plaintiff properly followed the grievance procedures when he bypassed the informal grievance level, and filed a "grievance of reprisal" with the Warden's office on November 4, 2004.  Plaintiff's formal grievance was a "grievance of reprisal" as it alleged "that staff have or are threatening to take retaliatory action against the inmate for good faith participation in the inmate grievance procedure."  *See* Fla. Admin. Code § 33-103.002(10).  The Warden's response to the grievance did not dispute that the grievance was a "grievance of reprisal." (Dkt. 1 at 16).  Instead, because the disciplinary report had been ordered to be reheard, the Warden's office returned Plaintiff's grievance "because there is no grievable issue at this time."  (Id.).

Fla. Admin. Code § 33-103.014 states:

33-103.014 Reasons for Return of Grievance or Appeal Without Processing. (1) The informal grievance, formal grievance, grievance filed direct, or grievance appeal, hereafter referred to as "grievance" in this section of the rule may be returned to the inmate without further processing if, following a review of the grievance, one or more of the following conditions are found to exist. The reasons listed below are the *only* reasons for returning a grievance without a response on the merits.

(a) The grievance addresses more than one issue or complaint;

7

(b) The grievance is so broad, general or vague in nature that it cannot be clearly investigated, evaluated and responded to;

(c) The grievance is not written legibly and cannot be clearly understood;

(d) The formal grievance was not received within 15 calendar days of the date of the response to the informal grievance;

(e) The formal grievance was not received within 15 calendar days of the date on which the incident or action being complained about occurred, if an informal grievance was not filed pursuant to subsection 33-103.006(3), F.A.C.;

(f) The inmate did not provide a valid reason for by-passing the previous levels of review as required or the reason provided is not acceptable. This evaluation is made on a case by case basis and the reasons for rejecting the complaint will vary with the facts alleged in the complaint.

(g) The grievance did not have the attachments required: informal grievance and response, except as allowed for in paragraphs 33-103.006(3)(a) through (h), F.A.C., or the formal grievance and response, except as provided for in subsection 33-103.007(6), F.A.C.;

(h) The direct grievance to the Office of the Secretary was not received within 15 calendar days of the date that the incident or action being grieved occurred; or

(i) The grievance appeal was not received within 15 calendar days from the date of the response to the formal grievance.

(j) The inmate has not filed his grievance at the location he is presently assigned to as required in subsection 33-103.015(4), F.A.C.

(k) The inmate is being advised to re-file an informal grievance with a specific staff member.

(l) The inmate has written his or her complaint outside of the boundaries of the space provided on the grievance form or request form.

(m) The inmate has used multiple copies of grievance forms rather than attachments as continuation sheets.

(n) A decision has already been rendered to an inmate by a particular office on the issue currently being grieved before it.

(o) The inmate is grieving a matter beyond the control of the Department as described in subsection 33-103.001(4), F.A.C.

(p) The inmate is raising allegations and charges in a grievance appeal that have not been raised below at the previous level. (Since this is an appellate review process and not a fact-finding process, it is not appropriate to raise new allegations, charges and facts that the previous decision maker has not had an opportunity to investigate and respond to.)

(q) The inmate has filed more than one appeal of a grievance. This would not include the situation where an inmate wishes to appeal the denial of his grievance as well as allege non-compliance with the grievance process. Since these are two separate issues, they would have to be raised in separate grievances.

(r) The inmate has filed a supplement to a grievance or appeal which has already been accepted. An exception will be made when the supplement contains relevant and determinative information which was not accessible to or known by the inmate at the time the original grievance or appeal was filed.

(s) Complaints are raised by an inmate regarding incidents, procedures, policies or rules that do not affect the inmate personally.

(t) The inmate had filed a grievance at the institutional level that should have been filed directly with the Office of the Secretary.

(2) An inmate who has a grievance returned to him for reasons stated in subsection (1) above [excluding paragraph (1)(d), (e), (h), (i), (n), (o), (q), (r) or (s)] may refile utilizing the proper procedure or correct the stated deficiency and refile if upon receipt of this notification the filing is within time frames allowable. *When a grievance is returned to an inmate for being improperly filed, the inmate shall be told why the grievance was returned and told that in order for him to receive administrative review of his complaint he must correct the defects and re-submit the grievance within the time frames set forth in Rule 33-103.011, F.A.C., unless instructed otherwise in the grievance response.* Instructions to resubmit are not necessary if a grievance is returned for reasons stated in paragraph (1)(d), (e), (h), (i), (n), (o), (q), (r) or (s).

(emphasis added).

The reason the Warden gave for returning the grievance to Plaintiff was not one of the grounds listed in 33-103.014, and Plaintiff was not "told that in order for him to receive administrative review of his complaint he must correct the defects and re-submit the grievance within the time frames set forth in Rule 33-103.011, F.A.C."  Also, the Court agrees with Plaintiff's contention in his grievance appeal to the Secretary's office that despite the rehearing of the disciplinary charge, he still raised a grievable issue, i.e., that Captain Cowart falsely charged him with a disciplinary infraction in retaliation for Plaintiff filing a grievance against Captain Cowart.  (*See* Dkt. 1 at 11-12).   In his grievance of reprisal, Plaintiff was not challenging a disciplinary conviction, but instead was grieving Captain Cowart's retaliation.  The Warden could have responded to that issue regardless of whether the disciplinary charge was being reheard.

When Plaintiff appealed the Warden's response to the Secretary's office, the Secretary's office returned the appeal grievance to Plaintiff without action because it was "in non-compliance with Chapter 33-103, Inmate Grievance Procedure, because your grievance at the institutional level was determined to be in non-compliance with the requirements of the rule resulting in your appeal to this office being in non-compliance." (Dkt. 1 at 13).  The Secretary's office also stated "[c]omplaints against staff of this nature should start at the institutional informal level."  (Id.).  However, a grievance alleging that officers have retaliated against a prisoner for "good faith participation in the inmate grievance procedure" is a "grievance of reprisal," *See*  Fla. Admin. Code § 33-103.002(10), and may be filed

directly with the Warden.  *See* Fla. Admin. Code § 33-103.006(3).  Moreover, the Warden's office did not state that Plaintiff's formal grievance was "in non-compliance" with the grievance procedure, but instead the Warden stated that there was no issue to grieve because the disciplinary charge was being reheard.  (Dkt. 1 at 16).

In summary, upon review of the record before the Court, it appears Plaintiff fully and properly exhausted his available administrative remedies as to his claim that Captain Cowart violated his First Amendment rights when Captain Cowart retaliated against him for filing grievances.[1]

However, Plaintiff failed to exhaust his administrative remedies as to his claims against Defendants Prieto and Sheetz.  In his November 4, 2004 grievance to the Warden, Plaintiff did not identify Defendants Sheetz or Prieto, and did not claim that their actions were in retaliation for Plaintiff filing a grievance against Captain Cowart, or that they knew or should have known that Captain Cowart was retaliating against Plaintiff by writing the disciplinary report (Dkt. 1 at 14).

On November 13, 2004, Plaintiff submitted a grievance in which he did indicate that Defendants Sheetz and Prieto found Plaintiff guilty of the disciplinary charge upon improper information, and denied him due process when they failed to explain why they did not credit the evidence Plaintiff submitted at the disciplinary hearing (Dkt. 1 at 30-32).  However,

---

[1]The Court recognizes that it previously found that Plaintiff failed to exhaust his administrative remedies (Dkt. 6).  However, upon consideration of the record before the Court, Defendants' Motion to Dismiss, and Plaintiff's response to Defendants' Motion to Dismiss, the Court agrees with Plaintiff, solely as to his claims against Defendant Cowart, that he complied with the prison grievance procedure and exhausted his administrative remedies.

11

Plaintiff did not raise a claim that Defendants Sheetz and Prieto retaliated against him, or that they knew or should have known that Captain Cowart wrote the false disciplinary report in retaliation for filing a grievance against him.  Moreover, Plaintiff fails to demonstrate that following the Warden's response to the November 13, 2004 grievance, he completed the grievance procedure by filing a grievance appeal with the Secretary's office.  *See* Fla. Admin. Code, Ch. 33-103.007.

On May 5, 2005, Plaintiff submitted an informal grievance complaining that Captain Cowart wrote him a false and retaliatory disciplinary charge, and Defendants Prieto and Sheetz found him guilty of the false charge (Dkt. 1 at 18-22).  However, the informal grievance was returned to Plaintiff without action because the informal grievance was not received within a reasonable time of when the incident occurred in September 2004 (Dkt. 1 at 18).  Both Plaintiff's formal grievance and grievance appeal on the issue were returned to Plaintiff without action as the informal grievance had been found untimely (Dkt. 1 at 23-27).

If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he procedurally defaults his claims. *Jones v. Bock*, 127 S. Ct. 910, 923 (2007); *Johnson v. Meadows*, 418 F.3d 1152, 1159 (11th Cir. 2005), *cert. denied*, 126 S. Ct. 2978 (2006).  Plaintiff never exhausted the grievance procedure regarding the claims he raised against Defendants Sheetz and Prieto in his November 13, 2004 grievance because he never filed an appeal grievance following the Warden's response to that grievance.  Nor did he exhaust his claims against Defendants Sheetz and Prieto when he raised them in his May 5, 2005 informal grievance as the informal

grievance was untimely.   "[A]n untimely grievance does not satisfy the exhaustion requirement of the PLRA." *Johnson v. Meadows*, 418 F.3d at 1157.   Moreover, there is nothing in the record to suggest that Plaintiff requested leave to file an untimely administrative grievance, and he does not assert good cause for his failure to file a timely grievance before he filed his federal complaint. "Prisoners must timely meet the deadlines or the good cause standard of [the state's] administrative grievance procedures before filing a federal claim." *Id*. at 1159.

Accordingly, Defendants' Motion to Dismiss will be granted to the extent that Plaintiff's claims against Defendants Sheetz and Prieto will be dismissed for Plaintiff's failure to demonstrate exhaustion of administrative remedies.

## 2. Failure to State a Claim

Defendants maintain that Plaintiff fails to state a claim upon which relief can be granted.  Specifically, Defendants argue that "Plaintiff has set forth no facts to support any plausible connection between the informal grievance against Defendant Cowart and the disciplinary confinement except his own conclusory statements."  (Dkt. 42 at 6).

Retaliation by prison officials against an inmate for engaging in protected activity is cognizable in a civil rights suit for damages. *Wildberger v. Bracknell*, 869 F.2d 1467 (11th Cir. 1989). "A prisoner can establish retaliation by demonstrating that the prison official's actions were the result of his having filed a grievance concerning the conditions of his imprisonment." *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003) (internal quotation and

13

citation omitted).  Plaintiff must allege a causal link between the protected activity and the adverse treatment, and there must be at least a "colorable suspicion" of retaliation for a complaint to survive and proceed into discovery.  *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983).  Such a causal connection may be alleged by a chronology of events that create a plausible inference of retaliation. *Cain v. Lane*, 857 F.2d 1139, 1143 n.6 (7th Cir. 1988). The temporal proximity of an allegedly retaliatory misbehavior report to a grievance may serve as circumstantial evidence of retaliation. *Gayle v. Gonyea*, 313 F.3d 677, 683-84 (2nd Cir. 2002).

In his complaint, Plaintiff alleges that Defendant Cowart retaliated against him by filing a false disciplinary report because he had filed grievances against her.  The documents attached to Plaintiff's complaint[2] indicate that on September 25, 2004, Plaintiff submitted an inmate request form to Defendant Cowart, and on October 4, 2004, Defendant Cowart woke Plaintiff up at 2:00 a.m., and threatened to write Plaintiff a disciplinary report for submitting the request (Dkt. 1 at 18).  On October 15, 2004, Plaintiff submitted another request form to Captain Cowart, and on October 18, 2004, Sgt. Gardner woke Plaintiff up at 1:00 a.m., and harassed Plaintiff about the October 15th request to Defendant Cowart.  (Id. at 20).  On October 30, 2004, Plaintiff wrote a grievance against Defendant Cowart, and on November 1, 2004, Defendant Cowart wrote Plaintiff a disciplinary report for disrespect to officials because Plaintiff's grievance was "written in all capital letters."  (Id.).  Plaintiff was

---

[2]When considering a motion to dismiss, the Court may consider the allegations of the complaint and documents attached to the complaint.  Fed. R. Civ. P. 12(b)(6), 10(c).

subsequently escorted to Defendant Cowart, Defendant Cowart then asked him if there was anything he wanted to say, and he told Defendant Cowart that his lawyer would be hearing about how Defendant Cowart had him confined for submitting a grievance (Id. at 21).  At that point, Defendant Cowart wrote Plaintiff another disciplinary charge for Spoken Threats for the statement he made to her about his lawyer (Id.).

Plaintiff has alleged that Defendant Cowart retaliated against him for filing grievances, and the temporal proximity of the discipline and harassment to the filing of the grievances raises a "colorable suspicion" or "plausible inference" of retaliation.  Therefore, Plaintiff has stated a First Amendment claim for retaliation against Defendant Cowart.

However, Plaintiff does not state a claim upon which relief can be granted against Defendants Sheetz and Prieto.  Plaintiff alleges that Defendants Sheetz and Prieto were the disciplinary hearing team members who found him guilty of the allegedly false disciplinary charge Defendant Cowart wrote (Dkt. 1 at 9).  Although Plaintiff alleges that Defendants Sheetz and Prieto "knew or should have known about the violation of Plaintiff's First Amendment right...and refused to stop or fix this wrong" (Id.), this is merely a conclusory allegation.  Broad, conclusory allegations of retaliation are insufficient to state a claim under § 1983. *Goldsmith v. Mayor and City Council of Baltimore*, 987 F.2d 1064, 1071 (4th Cir. 1993); *Flittie v. Solem*, 827 F.2d 276, 281 (8th Cir. 1987).  The factual allegations in Plaintiff's complaint are inadequate to suggest a retaliatory motive on the part of Defendants Sheetz and Prieto.  Therefore, Plaintiff's claims against Defendants Sheetz and Prieto will

be dismissed for failure to state a claim upon which relief can be granted.

**3. Eleventh Amendment Immunity**

Defendants assert that to the extent they are sued in their official capacity, they are entitled to Eleventh Amendment immunity.  In his response to Defendants' Motion to Dismiss, Plaintiff does not dispute that Defendants are entitled to Eleventh Amendment immunity, and he asks the Court to strike "the reference to the Defendant's [sic] being sued in their 'official' capacity, as the complaint is based on actions of the officials in their individual capacity."  (Dkt. 47 at 7).

"The Eleventh Amendment protects a State from being sued in federal court without the State's consent." *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003), *cert. denied*, 540 U.S. 1107 (2004). "Unless a State has waived its Eleventh Amendment immunity or Congress has overridden it, however, a State cannot be sued directly in its own name regardless of the relief sought." *Kentucky v. Graham*, 473 U.S. 159, 167, n. 14 (1985). The State of Florida has not waived sovereign immunity for § 1983 actions. *Zatler v. Wainwright*, 802 F.2d 397, 400 (11th Cir. 1986) (citation omitted).  The protection provided to states under the Eleventh Amendment is also afforded to State officials sued in their official capacities, because a suit against a governmental officer in his official capacity is the same as a suit against the entity that employs the officer. *Zatler*, 802 F.2d at 400.  Accordingly, to the extent Plaintiff sues Defendants in their official capacities, such claims are barred by the Eleventh Amendment.

**4. Qualified Immunity**

Defendants also assert that they are entitled to qualified immunity.  Specifically, Defendants maintain that they were acting within the scope of their discretionary authority, and "no case law exists requiring corrections personnel to avoid sending an inmate into disciplinary confinement when that inmate allegedly made disrespectful comments to the corrections officer." (Dkt. 44 at 11).

The Eleventh Circuit has stated:

> "Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002) (citation omitted). To receive qualified immunity, a government official must first establish that he was acting within his discretionary authority. McClish v. Nugent, 483 F.3d 1231, 1237 (11th Cir. 2007); Vinyard, 311 F.3d at 1346...

> Once a government official establishes that he was acting within the scope of his discretionary authority, the burden shifts to the plaintiff.  McClish, 483 F.3d at 1237; Vinyard, 311 F.3d at 1346. The Supreme Court has set forth a two-part test for qualified immunity. Vinyard, 311 F.3d at 1346 (citing Hope v. Pelzer, 536 U.S. 730, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002)). First, a court must undertake the threshold inquiry of whether the plaintiff's allegations, if true, establish a constitutional violation. Id. If a constitutional right would have been violated under the plaintiff's version of the facts, the next question is whether the constitutional right was clearly established. Id. The right must have been clearly established at the time of the alleged violation. Id. at 1349. Further, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 202, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272 (2001). Stated another way, "the salient question . . . is whether the state of the law [at the time of the events in question] gave respondents fair warning that their alleged treatment of [the plaintiff] was unconstitutional." Hope, 536 U.S. at 741, 122 S. Ct. at 2516.

17

*Al-Amin v. Smith*, 511 F.3d 1317, 1325 (11th Cir. 2008).

Defendants were acting within their discretionary authority as to disciplining Plaintiff, and Plaintiff fails to establish Defendants Sheetz and Prieto violated his constitutional rights. Therefore, Defendants Sheetz and Prieto are entitled to qualified immunity.

However, taking Plaintiff's allegations as true, Plaintiff establishes a violation of his First Amendment rights by Defendant Cowart. This Court further concludes that pre-existing law gave Defendant Cowart clear warning that charging Plaintiff with a false disciplinary infraction in retaliation for Plaintiff filing grievances was unlawful. *See Farrow*, 320 F. 3d at 1248. Therefore, Defendant Cowart is not entitled to qualified immunity at this stage of the proceedings.

ACCORDINGLY, the Court **ORDERS** that:

1. Defendants' Motion to Dismiss (Dkt. 44) is **GRANTED in part and DENIED in part** as follows:

a. The claims against Defendants Sheetz and Prieto are **DISMISSED** for failure to exhaust administrative remedies and failure to state a claim upon which relief can be granted, and Defendants Sheetz and Prieto are entitled to Eleventh Amendment and qualified immunity.

b. The claims against Defendant Cowart in her official capacity are **DISMISSED** on the basis of Eleventh Amendment immunity.

c. In all other respects the Motion to Dismiss is **DENIED**.

18

2.      Defendant Cowart shall file an Answer within twenty (20) days from the date
on this Order.

**DONE** and **ORDERED** in Tampa, Florida on May 19, 2008.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

SA:sfc

Copy furnished to:
*Pro Se* Plaintiff
Counsel of Record